United States District Court

Eastern District of Louisiana

Harvey Honore Constr

v. CIVIL ACTION NO. 2:04-cv-02294

Blitch SECTION T, MAG-2

The record reflects that a Notice of Removal has been filed in the captioned case; accordingly,

Pursuant to 28 U.S.C. 1447(b), the removing party is directed to file within 10 days:

(1) A list of all parties still remaining in this action;

(2) Copies of all pleadings, including answers, filed by those parties in state court; and

(3) Copies of the return on service of process on those parties filed in state court.

New Orleans, Louisiana, August 16, 2004.

By Direction of the Court

LORETTA G. WHYTE, CLERK

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2004 AUG 11 P 3:21
LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **HARVEY HONORÉ CONSTRUCTION COMPANY, L.L.C.** | * | **CIVIL ACTION** |
| | * | **NO.** 04-2294 |
| **VERSUS** | * | |
| | * | **SECTION** |
| **RONALD B. BLITCH; BLITCH-KNEVEL ARCHITECTS, INC., F/K/A BLITCH ARCHITECTS, INC.; LORI H. MOON, Ph.D.; CATHERINE D. LAMBERG; CARRIE E. DOBBINS; TRACY M. MERCADEL; REGINALD M. WALKER; RICHARD MANCINI; AND PETER CLARK** | * | **MAG.** SECT. T MAG. 2 |
| | * | **JUDGE** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**NOTICE OF REMOVAL**

**NOW INTO COURT**, through undersigned counsel, comes defendants, Ronald B. Blitch and Blitch-Knevel Architects, Inc., F/K/A Blitch Architects, Inc. (hereinafter collectively referred to as "BKA"), who respectfully avers as follows:

1.

Harvey Honoré Construction Company, L.L.C. ("HHCCI") recently filed suit against BKA and other defendants in the Civil District Court for the Parish of Orleans, State of Louisiana, which suit is captioned "Harvey Honoré Construction Company, L.L.C. v. Ronald



Fee 150.
Process
X Dktd
CtRmDep
Doc. No.

B. Blitch; Blitch-Knevel Architects, Inc., F/K/A Blitch Architects, Inc.; Lori H. Moon, Ph.D.; Catherine D. Lamberg; Carrie E. Dobbins; Tracy M. Mercadel; Reginald M. Walker; Richard Mancini; and Peter Clark" and bears docket number 2004-10706-D. Plaintiff alleges damages arising from the performance of a federally funded and federally managed project to construct the Fischer Senior Housing Village, IFB/Contract No. 01-130-02-14 ("Fischer Senior Housing Project"). Copies of the citation and petition are attached hereto as Exhibit "A" and incorporated herein as if set forth *in extenso*.

2.

Removal of this suit to federal court is proper under the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1), because HHCCI's suit against BKA is an action against a person acting under an officer of the United States government, namely the U.S. Department of Housing and Urban Development ("HUD"), for acts allegedly committed under color of such office, all as more fully described below.

3.

The Housing Authority of New Orleans ("HANO") is one of the nation's largest public housing authorities with more than 13,000 housing units and more than 24,000 residents. Due to longstanding and severe management problems, HUD placed HANO under partial administrative receivership in 1996 which involved dissolution of HANO's Board of Commissioners and installation of a HUD representative as Executive Monitor to oversee HANO's progress. Attached as Exhibit "B" is a copy of a U.S. General Accounting Office Report ("GAO Report") regarding Receiverships of Public Housing Authorities with specific reference to HANO. The GAO Report is incorporated herein as if set forth *in extenso*.

4.

In 2002, HUD placed HANO under full administrative receivership which involved a complete takeover of HANO's management, operations and assets. HUD replaced HANO's previous management with a receivership team of HUD officers to assume control of HANO's management and operations ("HUD Receivership Team"). *See*, GAO Report attached hereto as Exhibit "B" and incorporated herein as if set forth *in extenso*.

5.

The HUD Receivership Team included longtime HUD officers Catherine Lamberg, who served as Interim Administrative Receiver until May 2004, and Lori H. Moon, Ph.D., who continues to serve as Deputy Administrative Receiver.

6.

Upon taking control of HANO, HUD began to rehabilitate and modernize HANO's deteriorated housing stock. HUD initiated the Fischer Senior Housing Project with financing provided by HUD.

7.

HANO contracted with HHCCI to serve as general contractor for the Fischer Senior Housing Project ("General Contract"). The General Contract was executed on a HUD prepared contract which is governed by federal regulations, particularly HUD procurement regulations located at 24 CFR Part 85. A copy of the General Contract is attached hereto as Exhibit "C" and incorporated herein as if set forth *in extenso*.

8.

HANO contracted with BKA to provide professional architectural design and construction administration services for the Project ("Design Contract"). The Design

Contract was also executed on a HUD prepared contract which is governed by federal regulations, particularly HUD minimum property standards and HUD procurement regulations (24 CFR Part 85). A copy of the Design Contract is attached hereto as Exhibit "D" and incorporated herein as if set forth *in extenso*.

9.

At all pertinent times herein, HUD exerted direct and detailed control over construction of the Fischer Senior Housing Project. Attached as Exhibit "E" is an affidavit executed by Ronald Blitch, President of Blitch-Knevel Architects, Inc. (APC) and architect of record for the Fischer Senior Housing Project ("BKA Affidavit"), which is incorporated herein as if set forth in extenso.

10.

BKA prepared plans and specifications for the Fischer Senior Housing Project in compliance with detailed and comprehensive federal regulations which included HUD minimum property standards, HUD procurement regulations, Fair Housing Accessibility Guidelines, 504 Access Regulations and the Americans with Disabilities Act. *See*, BKA Affidavit attached hereto as Exhibit "E" and incorporated herein as if set forth in extenso.

11.

BKA also performed professional construction administration services for the Fischer Senior Housing Project in compliance with detailed and comprehensive federal regulations which included the HUD minimum property standards and HUD procurement regulations. *See*, Blitch Affidavit which is attached hereto as Exhibit "E" and incorporated herein as if set forth *in extenso*.

12.

Moreover, BKA's construction administration services were performed in compliance with detailed federal directives from the HUD Receivership Team. In particular, Catherine Lamberg and Dr. Lori H. Moon provided direct oversight of BKA's administrative services. See, Blitch Affidavit which is attached hereto as Exhibit "E" and incorporated herein as if set forth *in extenso*.

13.

Ms. Lamberg and Dr. Moon held periodic progress meetings with BKA and regularly visited the site to inspect the progress of the Project. See, Blitch Affidavit which is attached hereto as Exhibit "E" and incorporated herein as if set forth *in extenso*.

14.

BKA addressed all progress reports, contractor pay recommendations and other issues to Ms. Lamberg and Dr. Moon who provided responses, instructions and directions. Ms. Lamberg and Dr. Moon have also been named as defendants in HHCCI's lawsuit. See, BKA Affidavit attached hereto as Exhibit "E" and incorporated herein as if set forth in extenso.

15.

Based on the foregoing, BKA is entitled to raise the federal contractor defense of governmental immunity. Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 21 (1940); Boyle v. United Technologies Co., 487 U.S. 500 (1988); Carley v. Wheeled Coach, 991 F.2d 1117 (3rd Cir. 1993); and Guillory v. Ree's Contract Service, Inc., 872 F.Supp. 344 (S.D. Miss. 1994).

16.

The assertion of the federal contractor defense entitles BKA to removal under 28 U.S.C. 1442(a)(1). Willingham v. Morgan, 395 U.S. 402 (1969); Mesa v. California, 489 U.S. 121 (1989); Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998).

17.

Federal Officer Removal is absolute and removes the entire case to federal court without the need for the unanimous consent of the co-defendants. Fowler v. Southern Bell Telephone & Telegraph Co., 343 F.2d 150 (5th Cir. 1965); and Akin v. Ashland Chemical Co., 156 F.3d 1030, 1034 (10th Cir. 1998).

18.

BKA's notice of removal is timely being filed within 30 days of service of the petition by HHCCI, as required by 28 U.S.C. §1446(b).

Respectfully Submitted,

**CLEMENT & GATES, Counselors at Law**
***A Limited Liability Company***

DAVID C. CLEMENT (#23687), T.A.
LARA J. JENSEN (#24131)
307 Tchoupitoulas Street, Suite 350
New Orleans, Louisiana 70130
Telephone: (504) 598-2220
Facsimile: (504) 598-2221
Email: dcc@clementgate.com

*Attorney for Defendants:*
*Ronald B. Blitch and Blitch-Knevel Architects, Inc., F/K/A Blitch Architects, Inc.*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 11th day of August, 2004, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed, and first class postage prepaid.

DAVID C. CLEMENT

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **HARVEY HONORÉ CONSTRUCTION COMPANY, L.L.C.** | * | **CIVIL ACTION** |
| | * | **NO.** |
| **VERSUS** | * | |
| | * | **SECTION** |
| **RONALD B. BLITCH; BLITCH-KNEVEL ARCHITECTS, INC., F/K/A BLITCH ARCHITECTS, INC.; LORI H. MOON, Ph.D.; CATHERINE D. LAMBERG; CARRIE E. DOBBINS; TRACY M. MERCADEL; REGINALD M. WALKER; RICHARD MANCINI; AND PETER CLARK** | * | **MAG.** |
| | * | **JUDGE** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**NOTICE OF REMOVAL**

**NOW INTO COURT**, through undersigned counsel, comes defendants, Ronald B. Blitch and Blitch-Knevel Architects, Inc., F/K/A Blitch Architects, Inc. (hereinafter collectively referred to as "BKA"), who respectfully avers as follows:

1.

Harvey Honoré Construction Company, L.L.C. ("HHCCI") recently filed suit against BKA and other defendants in the Civil District Court for the Parish of Orleans, State of Louisiana, which suit is captioned "Harvey Honoré Construction Company, L.L.C. v. Ronald

B. Blitch; Blitch-Knevel Architects, Inc., F/K/A Blitch Architects, Inc.; Lori H. Moon, Ph.D.; Catherine D. Lamberg; Carrie E. Dobbins; Tracy M. Mercadel; Reginald M. Walker; Richard Mancini; and Peter Clark" and bears docket number 2004-10706-D. Plaintiff alleges damages arising from the performance of a federally funded and federally managed project to construct the Fischer Senior Housing Village, IFB/Contract No. 01-130-02-14 ("Fischer Senior Housing Project"). Copies of the citation and petition are attached hereto as Exhibit "A" and incorporated herein as if set forth *in extenso*.

2.

Removal of this suit to federal court is proper under the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1), because HHCCI's suit against BKA is an action against a person acting under an officer of the United States government, namely the U.S. Department of Housing and Urban Development ("HUD"), for acts allegedly committed under color of such office, all as more fully described below.

3.

The Housing Authority of New Orleans ("HANO") is one of the nation's largest public housing authorities with more than 13,000 housing units and more than 24,000 residents. Due to longstanding and severe management problems, HUD placed HANO under partial administrative receivership in 1996 which involved dissolution of HANO's Board of Commissioners and installation of a HUD representative as Executive Monitor to oversee HANO's progress. Attached as Exhibit "B" is a copy of a U.S. General Accounting Office Report ("GAO Report") regarding Receiverships of Public Housing Authorities with specific reference to HANO. The GAO Report is incorporated herein as if set forth *in extenso*.

4.

In 2002, HUD placed HANO under full administrative receivership which involved a complete takeover of HANO's management, operations and assets. HUD replaced HANO's previous management with a receivership team of HUD officers to assume control of HANO's management and operations ("HUD Receivership Team"). *See*, GAO Report attached hereto as Exhibit "B" and incorporated herein as if set forth *in extenso*.

5.

The HUD Receivership Team included longtime HUD officers Catherine Lamberg, who served as Interim Administrative Receiver until May 2004, and Lori H. Moon, Ph.D., who continues to serve as Deputy Administrative Receiver.

6.

Upon taking control of HANO, HUD began to rehabilitate and modernize HANO's deteriorated housing stock. HUD initiated the Fischer Senior Housing Project with financing provided by HUD.

7.

HANO contracted with HHCCI to serve as general contractor for the Fischer Senior Housing Project ("General Contract"). The General Contract was executed on a HUD prepared contract which is governed by federal regulations, particularly HUD procurement regulations located at 24 CFR Part 85. A copy of the General Contract is attached hereto as Exhibit "C" and incorporated herein as if set forth *in extenso*.

8.

HANO contracted with BKA to provide professional architectural design and construction administration services for the Project ("Design Contract"). The Design

Contract was also executed on a HUD prepared contract which is governed by federal regulations, particularly HUD minimum property standards and HUD procurement regulations (24 CFR Part 85). A copy of the Design Contract is attached hereto as Exhibit "D" and incorporated herein as if set forth *in extenso*.

9.

At all pertinent times herein, HUD exerted direct and detailed control over construction of the Fischer Senior Housing Project. Attached as Exhibit "E" is an affidavit executed by Ronald Blitch, President of Blitch-Knevel Architects, Inc. (APC) and architect of record for the Fischer Senior Housing Project ("BKA Affidavit"), which is incorporated herein as if set forth in extenso.

10.

BKA prepared plans and specifications for the Fischer Senior Housing Project in compliance with detailed and comprehensive federal regulations which included HUD minimum property standards, HUD procurement regulations, Fair Housing Accessibility Guidelines, 504 Access Regulations and the Americans with Disabilities Act. *See*, BKA Affidavit attached hereto as Exhibit "E" and incorporated herein as if set forth in extenso.

11.

BKA also performed professional construction administration services for the Fischer Senior Housing Project in compliance with detailed and comprehensive federal regulations which included the HUD minimum property standards and HUD procurement regulations. *See*, Blitch Affidavit which is attached hereto as Exhibit "E" and incorporated herein as if set forth *in extenso*.

12.

Moreover, BKA's construction administration services were performed in compliance with detailed federal directives from the HUD Receivership Team. In particular, Catherine Lamberg and Dr. Lori H. Moon provided direct oversight of BKA's administrative services. *See*, Blitch Affidavit which is attached hereto as Exhibit "E" and incorporated herein as if set forth *in extenso*.

13.

Ms. Lamberg and Dr. Moon held periodic progress meetings with BKA and regularly visited the site to inspect the progress of the Project. *See*, Blitch Affidavit which is attached hereto as Exhibit "E" and incorporated herein as if set forth *in extenso*.

14.

BKA addressed all progress reports, contractor pay recommendations and other issues to Ms. Lamberg and Dr. Moon who provided responses, instructions and directions. Ms. Lamberg and Dr. Moon have also been named as defendants in HHCCI's lawsuit. See, BKA Affidavit attached hereto as Exhibit "E" and incorporated herein as if set forth in extenso.

15.

Based on the foregoing, BKA is entitled to raise the federal contractor defense of governmental immunity. Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 21 (1940); Boyle v. United Technologies Co., 487 U.S. 500 (1988); Carley v. Wheeled Coach, 991 F.2d 1117 (3rd Cir. 1993); and Guillory v. Ree's Contract Service, Inc., 872 F.Supp. 344 (S.D. Miss. 1994).

16.

The assertion of the federal contractor defense entitles BKA to removal under 28 U.S.C. 1442(a)(1). Willingham v. Morgan, 395 U.S. 402 (1969); Mesa v. California, 489 U.S. 121 (1989); Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998).

17.

Federal Officer Removal is absolute and removes the entire case to federal court without the need for the unanimous consent of the co-defendants. Fowler v. Southern Bell Telephone & Telegraph Co., 343 F.2d 150 (5th Cir. 1965); and Akin v. Ashland Chemical Co., 156 F.3d 1030, 1034 (10th Cir. 1998).

18.

BKA's notice of removal is timely being filed within 30 days of service of the petition by HHCCI, as required by 28 U.S.C. §1446(b).

Respectfully Submitted,

**CLEMENT & GATES, Counselors at Law**
***A Limited Liability Company***

DAVID C. CLEMENT (#23687), T.A.
LARA J. JENSEN (#24131)
307 Tchoupitoulas Street, Suite 350
New Orleans, Louisiana 70130
Telephone: (504) 598-2220
Facsimile: (504) 598-2221
Email: dcc@clementgate.com

*Attorney for Defendants:*
*Ronald B. Blitch and Blitch-Knevel Architects, Inc., F/K/A Blitch Architects, Inc.*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 11th day of August, 2004, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed, and first class postage prepaid.

DAVID C. CLEMENT

ATTORNEY'S NAME: Brown, Deirdre Care, Esq. 25989
AND ADDRESS: 3027 Ridgelake Dr.
P.O. Box 8176
Metairie LA 70011

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 20 04-10706 SECTION: 16-D

HARVEY HONOR'CONSTRUCTION COMPANY,L.L.C
vs.
BLITCH, RONALD B. ET AL

C I T A T I O N

TO: RONALD B. BLITCH
757 ST. CHARLES AVENUE
NEW ORLEANS LA

YOU HAVE BEEN SUED:

You must either comply with the demand contained in the petition FOR DAMAGES a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you may call 529-1000 for more information. COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE.

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of The Civil District Court for the Parish of Orleans, State of LA July 26, 2004.

Clerk's Office, Room 402, Civil Courts Building
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA

By ____ 
Deputy Clerk

SHERIFF'S RETURN:
(for use of process servers only)

PERSONAL SERVICE

On this ____ day of ____ served a copy of the w/i petition FOR DAMAGES On RONALD B. BLITCH ____ in person

Returned same day

____ No. ____

Deputy Sheriff of Orleans Parish

Mileage: $____

____ ENTERED ____
PAPER RETURN

____/____/____
SERIAL NO. DEPUTY PARISH

DOMICILIARY SERVICE

On this ____ day of ____ served a copy of the w/i petition FOR DAMAGES On RONALD B. BLITCH

by leaving same at the dwellinghouse, or usual place of abode, 757 ST. CHARLES AVENUE in the hands of ____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said RONALD B. BLITCH being absent from the domicile at time of said service.

Returned same day

____ No. ____

Deputy Sheriff of Orleans Parish

EXHIBIT
A

Recd MS
7/28/04

ATTORNEY'S NAME: Brown, Deirdre Care, Esq. 25989
AND ADDRESS: 3027 Ridgelake Dr.
P.O. Box 8176
Metairie LA 70011

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 20 04-10706 SECTION: 16-D

HARVEY HONOR'CONSTRUCTION COMPANY, L.L.C
vs.
BLITCH, RONALD B. ET AL

C I T A T I O N

TO: BLITCH-KNEVEL ARCHITECTS, INC., F/K/A/ BLITCH
THROUGH: ARCHITECTS, INC.
THROUGH ITS REGISTERED AGENT ROBERT M. STEEG
201 ST. CHARLES AVENUE, SUITE 3201
NEW ORLEANS LA

YOU HAVE BEEN SUED:

You must either comply with the demand contained in the petition FOR DAMAGES, a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you may call 529-1000 for more information. COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE.

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of The Civil District Court for the Parish of Orleans, State of LA July 26, 2004.

Clerk's Office, Room 402, Civil Courts Building
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by [signature]
Deputy Clerk

SHERIFF'S RETURN:
(for use of process servers only)

PERSONAL SERVICE

On this ____ day of ____________ served a copy of the w/i petition FOR DAMAGES
On BLITCH-KNEVEL ARCHITECTS, INC., F/K/A/ BLITCH in person through ARCHITECTS, INC.

Returned same day

____________________ No. ____

Deputy Sheriff of Orleans Parish

Mileage: $____________

DOMICILIARY SERVICE

On this ____ day of ____________ served a copy of the w/i petition FOR DAMAGES
On BLITCH-KNEVEL ARCHITECTS, INC., F/K/A/ BLITCH through ARCHITECTS, INC.
by leaving same at the dwellinghouse, or usual place of abode,
THROUGH ITS REGISTERED AGENT ROBERT M. STEEG
201 ST. CHARLES AVENUE, SUITE 3201
in the hands of ____________
a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said BLITCH-KNEVEL ARCHITECTS, INC., F/K/A/ BLITCH being absent from the domicile at time of said service.

Returned same day

____________________ No. ____

Deputy Sheriff of Orleans Parish

________ ENTERED ________
PAPER RETURN

________/________/________
SERIAL NO. DEPUTY PARISH

FILED

23 P 2:03

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CIVIL COURT

NO.: 04-10706 DIVISION "D"

HARVEY HONORE' CONSTRUCTION COMPANY, L.L.C.

versus

RONALD B. BLITCH; BLITCH-KNEVEL ARCHITECTS, INC., F/K/A BLITCH ARCHITECTS, INC.; LORI H. MOON, Ph.D.; CATHERINE D. LAMBERG; CARRIE E. DOBBINS; TRACY M. MERCADEL; REGINALD M. WALKER; RICHARD MANCINI; and PETER CLARK

FILED: ______________________ ______________________
DEPUTY CLERK

**PETITION FOR DAMAGES**

The petition of Plaintiff, Harvey Honoré Construction Company, L.L.C. (hereinafter, "Honoré"), respectfully represents as follows:

1.

Honoré is a Louisiana limited liability company authorized to do and doing business in the State of Louisiana.

2.

Made Defendants herein are the following:

1. Ronald B. Blitch, a person of the full age of majority, who on information and belief is domiciled in New Orleans, Louisiana (hereinafter, "Mr. Blitch");
2. Blitch-Knevel Architects, Inc., f/k/a Blitch Architects, Inc., (hereinafter, "Blitch-Knevel"), a corporation recognized and existing under the laws of the State of Louisiana, with its registered office in the Parish of Orleans;
3. Lori H. Moon, Ph.D., who is a person of the full age of majority, domiciled in Columbia, South Carolina (hereinafter, "Dr. Moon");

4. Catherine D. Lamberg, who is a person of the full age of majority, and who on information and belief is domiciled in Memphis, Tennessee (hereinafter, "Ms. Lamberg");

5. Carrie E. Dobbins, a person of the full age of majority, who on information and belief is domiciled in New Orleans, Louisiana (hereinafter, "Ms. Dobbins");

6. Tracy M. Mercadel, a person of the full age of majority, domiciled in New Orleans, Louisiana (hereinafter, "Mr. Mercadel");

7. Reginald M. Walker, a person of the full age of majority, domiciled in New Orleans, Louisiana (hereinafter, "Mr. Walker"); and,

8. Richard Mancini, a person of the full age of majority, who on information and belief is domiciled in St. Tammany Parish, Louisiana (hereinafter, "Mr. Mancini"); and

9. Peter Clark, a person of the full age of majority, who on information and belief is domiciled in New Orleans, Louisiana (hereinafter, "Mr. Clark").

All of the facts and transactions giving rise to the causes of action pleaded herein occurred in Orleans Parish, Louisiana.

3.

On or about June 27, 2001, Honoré entered into a contract with the Housing Authority of New Orleans (hereinafter, "HANO") for the construction of the Fischer Senior Housing Village (hereinafter, "Fischer"), HANO's IFB/ Contract No. 01-130-02-14 (hereinafter, "Project").

4.

The Project was marred with conflict related to insufficient plans, delays caused by the owner and/or architect, payment disputes, change order disputes, and the ineffective record keeping and management of HANO. Many of these conflicts were caused by the professional negligence of individuals working for HANO, HANO's consultants and their subcontractors, and HANO's architects and their subcontractors.

## NEGLIGENCE OF ARCHITECT

5.

The architect for the Project was Ronald B. Blitch and his firm, Blitch-Knevel (sometimes collectively referred to herein as "Blitch"). Blitch, personally, was the partner in charge of the Project.

6.

Blitch's contract was not renewed even though the Project was not complete, due to major unresolved issues the owner had with Blitch, including but not limited to: delays due to architect's failure to timely submit documents to secure city permits; delays due to architect's failure to timely submit approved plans to the Sewerage and Water Board; non-responsiveness to construction questions; failure to work in a cooperative manner with the owner; and abusive conduct towards individuals working on the Project.

7.

The architect had a duty to exercise the degree of professional care and skill customarily employed by other architects.

8.

Blitch failed to exercise due care: (1) in the preparation of the Project plans, designs, and specifications; (2) in consulting with the Project owner, engineers, contractors, or others in the course of the work; (3) in supervising the construction; (4) in furnishing clarifications of Project documents in a timely manner; and, (5) in certifying payments and/or approving necessary change orders.

9.

Blitch failed to exercise due care while acting as architect for the project. Examples of such failure include, but are not limited to: (1) failure to timely submit documents required to obtain approval from City of New Orleans necessary to commence work on the Project which delayed the Project by several months; (2) failure to timely submit contract documents to secure required approvals from the Sewerage and Water Board of New Orleans; (3) failure to acknowledge that the claim Blitch raised regarding defective work on the trusses had been resolved with the owner, which delayed the Project and payments owing to Honoré; (4) failure to cooperate and take direction from the owner; (5) hostile, divisive and ineffective supervision of

the construction which created delays and increased costs; and, (6) improper handling of change orders and requests for extension of time.

10.

Because of the negligent acts or omissions of Blitch, Honoré suffered significant damages, including but not limited to: delay damages caused by Blitch's actions and inaction; increased overhead costs and lost profit due to Blitch's failure to timely respond to construction issues; lost profits due to increase costs of subcontractors resulting from the delay in Blitch obtaining necessary approvals to commence work on the project; damages as a result of Blitch's errors in design of the Project; opportunity costs, damage to reputation, loss of compensation, and loss of anticipated profits from other business that Honoré could not participate in due to the delay and additional work necessary on this Project.

## NEGLIGENCE OF OWNER'S REPRESENTATIVES

11.

Dr. Moon is a consultant to HANO serving in the capacity of deputy administrative receiver. Dr. Moon took the "lead" in performing the services required by HANO in New Orleans under the original consulting contract with Griffith Group. On information and belief, the consulting contract with Griffith Group was later assigned to Dr. Nadine Jarmon. Dr. Moon was a subcontractor of Dr. Jarmon's.

12.

Ms. Lamberg was the Contracting Officer for approximately two years of the Project, and was the Contracting Officer that participated in most of the meetings held regarding Honoré's claims arising from the Project. Ms. Lamberg, as contracting officer, was the only individual authorized by the contract to give instruction to the contractor and sign any contract documents on behalf of the owner.

13.

Dr. Moon had no construction experience, and despite her lack of experience she was the person acting with the most authority on the Project for HANO, despite the fact that Ms. Lamberg was the Contracting Officer. Dr. Moon issued owner directives to Honoré which directives were approved by the Contracting Officer. In addition, the Contracting Officer routinely sought direction and advice from Dr. Moon for the management of the Project.

14.

Dr. Moon ordered changes in the specifications for the cabinets, requiring Honoré to install raised panel wood cabinets versus institutional grade plastic laminate cabinets as required by Blitch's specifications. This singular change and Dr. Moon's negligence in providing inadequate instruction to and supervision over the architect with respect to this proposed change, has caused Honoré significant added overhead costs, as it was caught in the middle between the owner's consultant and Blitch.

15.

Dr. Moon and/or Ms. Lamberg's inability to adequately oversee the Project, and their negligence in administering the contract, including the failure to timely remove Blitch caused Honoré significant economic damages.

16.

In addition, Honoré suffered significant economic damages due to Dr. Moon's and/or Ms. Lamberg's: (1) lack of skill or knowledge in construction, (2) failure to properly train and/or instruct the owner's consultants, and (3) failure to satisfy the duty of professional care. For example, despite numerous change orders and additive work on the contract which was coupled with an Architect that was admittedly unprofessional and uncooperative, the owner refused to extend the completion date for the Project. The owner has never computed what the completion date for the contract would have been if Honoré had not been delayed by the architect. Therefore, any reliance on the completion date provided for in the contracts was negligent, as that date does not reflect reasonable extensions of time that should have been granted to Honoré due to change orders and delay caused by the architect.

17.

Dr. Moon's and/or Ms. Lamberg's lack of skill and knowledge in construction was further apparent when they required Honoré to tender the Project on a building by building basis (i.e., "phasing"), as opposed to a tendering when the total Project was substantially complete. This directive necessarily required different phasing for the construction and increased costs to Honoré. However, Dr. Moon and/or Ms. Lamberg refused to issue a change order for the increased cost caused by this directive, and refused to grant an extension of time for delays that were caused by completing the Project on a per building basis.

18.

Further, Dr. Moon and Ms. Lamberg were negligent in failing to investigate and become knowledgeable about the claims and issues raised by Honoré, despite Honoré's best effort to attempt to negotiate an amicable resolution with HANO and mitigate any further damages.

19.

Ms. Dobbins was appointed to replace Ms. Lamberg in late April 2004, and, on information and belief, assumed the responsibilities of Contracting Officer on the Project. Without making a sufficient due diligence inquiry of the Project's history and properly assessing the cause for the delay on the Project, Ms. Dobbins unjustifiably and without adequate cause declared Honoré in default under the contract.

20.

Mr. Mercadel was the most recent Project Manager and was responsible for preparing punch lists for the Project. Due to Mr. Mercadel's negligence, the punch lists were ambiguous and unclear. Honoré was accused of not curing the deficiencies listed on the punch lists.

21.

Mr. Mercadel also required Honoré to use a different form for its payment applications, after Honoré submitted payment application 22. At that time, Honoré had already submitted payment applications 1 through 21 without HANO raising any issue with the form Honoré used to submit those applications. This change in the course of dealing between HANO and Honoré caused delay in the processing of Honoré's payment application 22. The negligence of Mr. Mercadel (and/or the negligence of the staff person that approved the first 21 payment applications) created financial strains on Honoré with respect to the delay in processing Honoré's payment application on the basis that the wrong form was submitted. Honoré suffered economic damages due to the delay in processing the payment application.

22.

Mr. Clark was named the director of the modernization department at HANO after the Project was underway. In that capacity, Mr. Clark directed and participated in all of the foregoing facts after his appointment, including but not limited to allowing the foregoing facts to occur, failing to mitigate any loss which HANO may have incurred; failure to mitigate losses as a result of any improper work which Honoré may have done (it is denied by Honoré that any improper

work was done); and failing to properly perform duties required of the owner on the Project by allowing inconsistent and inapplicable instructions to be given to Honoré.

23.

The negligent actions and poor management of the contract by Dr. Moon, Ms. Lamberg, Ms. Dobbins, Mr. Mercadel and Mr. Clark caused economic damage to Honoré for which each defendant is personally and solidarily liable, including but not limited to: delay damages; increased cost of overhead and lost profit; lost profits due to increase cost of subcontractors due to delays caused by failure of HANO and/or the architect to submit documents to obtain necessary permits to commence work on the project; lost opportunity costs; damage to reputation; loss of compensation; and, loss of anticipated profits from other business that Honoré could not participate in due to the delay and additional work necessary on this.

## NEGLIGENCE OF OWNER'S PROJECT MANAGEMENT CONSULTANTS

24.

Mr. Walker is the president and sole shareholder of Moss Creek Development Company, Inc. (hereinafter, "Moss Creek"). On information and belief, Mr. Walker recently purchased a fifty (50%) percent membership interest in Columbia Highlands, L.L.C. (hereinafter, "Columbia Highlands"), a Georgia limited liability company, and he is the managing member.

25.

Columbia Highlands was procured as a consultant for the Project to perform a certain program management functions for the Project. Mr. Walker was the overall manager for Columbia Highlands on the Project.

26.

Mr. Walker oversaw the HANO Project Manager and was responsible for ensuring that the procedures set by HANO were followed on the Project. In addition, he was vested with the responsibility of dealing directly with Honoré to discuss change orders and problems on the Project. Mr. Walker was negligent in his duties and failed to ensure the policies were being followed. But for his negligence, many of the problems on the Project would not have occurred, including but not limited to: his failure to adequately communicate with the architect and/or HANO regarding the issues involving the trusses; failure to adequately perform the program

management duties that he supervised on behalf of Columbia Highlands; and his failure to make sure HANO's files were being properly documented for the Project. Those problems caused damage to Honoré.

27.

On information and belief, Mr. Mancini is an employee of Columbia Highlands and a subordinate of Mr. Walker. Mr. Mancini was involved with the day to day affairs on the Project from November 2003 forward. Mr. Mancini negligently recommended defaulting Honoré under the contract without conducting a diligent review of the Project history and pending disputes. Furthermore, Mr. Mancini was negligent in fulfilling the day to day program management functions he and Columbia Highlands were obligated to perform.

28.

Mr. Walker's and Mr. Mancini's negligence delayed certain aspects of the Project, delayed the remittance of payment to Honoré, and caused HANO to put Honoré in default. Mr. Walker and Mr. Mancini are personally and solidarily liable for the damages suffered by Honoré, including but not limited to: delay damages, lost profits, increased overhead costs, increased subcontractor costs, and lost opportunity cost.

29.

When Mr. Mercadel, Mr. Walker, Mr. Mancini, and Mr. Clark joined the Project, they consistently reversed decisions made by their predecessors upon which Honoré had to rely on in order to advance the Project. The unwarranted reversal of these decisions caused Honoré to expend additional funds and be delayed in the progress of the Project.

**DEFAMATION**

30.

Mr. Blitch on numerous occasions called the president of Honoré "a thief and a liar" without any foundation for such an insidious accusation or any basis in truth. Mr. Blitch maliciously repeated these falsehoods to numerous third parties, including HANO employees. On information and belief, Mr. Blitch continues to publish these falsehoods to third parties.

31.

Honoré's reputation was damaged, and the false accusations were another barrier imposed by Mr. Blitch and Blitch on this Project. In addition to the injury to its reputation, Mr. Blitch's

defamatory attack on Honoré caused Honoré to expend additional costs (including additional overhead expenses) for Honoré to respond to same.

32.

Mr. Blitch had overall Project responsibility as architect but was not allowed to complete the Project by HANO. This was exceptional, since it is reportedly rare for an architect to be replaced on a government project. Mr. Blitch blamed Honoré in part for his termination.

33.

Mr. Blitch admits that on or around May 2002, he contacted the Metropolitan Crime Commission of New Orleans (hereinafter, "MCC") to report alleged improper activity by Honoré on the Project. In deposition testimony, Mr. Blitch cited reasons for taking such actions, all of which reasons were without basis in fact, something Mr. Blitch knew or should have known at the time he contacted the MCC. Discovery is ongoing with respect to the communications made by Mr. Blitch to the MCC. On information and belief, Mr. Blitch sent a libelous email to MCC in May 2002 and had additional verbal and/or written communications with MCC that were defamatory.

34.

On information and belief, Mr. Blitch has never reported any other entity or any other person to the MCC for improper conduct.

35.

Mr. Blitch is personally liable to Honoré for the libelous and/or slanderous comments he made to third parties which has damaged Honoré's reputation and increased costs for Honoré.

## TORTIOUS INTERFERENCE WITH CONTRACT

36.

HANO employed architects and consultants on this Project. By virtue of HANO's contract with Honoré, Blitch-Knevel and the consultants that had contracts with HANO and their subcontracts had a duty to exercise professional care in the construction of the Project. Honoré has a protected interest against the design professionals and management professionals breaching this duty.

37.

All of defendants were aware of HANO's contract with Honoré.

38.

Dr. Moon, Ms. Lamberg, Mr. Blitch, Mr. Mercadel, Mr. Clark and Mr. Walker (collectively referred to hereinafter as,"interfering defendants") intentionally interfered with Honoré's contract with HANO and attempted to force Honoré into default by creating obstacles in the construction, by being uncooperative when issues arose that needed guidance and direction from the owner and/or architect, by refusing to timely process pay applications and change order requests, and by causing Honoré to be placed in default.

39.

The interfering defendants had no justification for refusing to authorize change orders, refusing to grant extensions of time and make certain payments, or recommending to put Honoré in default. In doing so, the interfering defendants failed to account for the effect of their own actions caused on the Project and to Honoré, such as imposing new conditions for completion, changing the cabinets to be installed, and placing ambiguous punch list demands on the contractor. Honoré became the scapegoat for the defendants' inefficient management of the Project.

40.

Honoré has suffered significant damages and additional costs resulting from the interference with its contract by the interfering defendants.

41.

The interfering defendants are personally and solidarily liable for the damages incurred by Honoré.

WHEREFORE, plaintiff, Honoré Construction Company, L.L.C., prays that this petition be filed and served accordingly, and that after due proceedings herein, there be judgment in its favor and against defendants, personally and solidarily, plus legal interest, and costs.

FURTHER, Honoré Construction Company, L.L.C. prays for all other general, equitable and legal relief to which it may be entitled, including attorneys fees.

Respectfully submitted,

Lloyd N. Shields (La. Bar #12022), T.A.
Daniel Lund, III (La. Bar #19014)
David B. Wilson (La. Bar #23977)
Deirdre Carey Brown (La. Bar #25989)
Shields Mott Lund L.L.P.
650 Poydras Street, Suite 2400
New Orleans, Louisiana 70130
Telephone: (504) 581-4445
Telecopy: (504) 581-4440

Attorneys for Harvey Honoré Construction Company, L.L.C.

**PLEASE SERVE:**

1. Ronald B. Blitch
   757 St. Charles Avenue
   New Orleans, Louisiana 70130

2. Blitch-Knevel Architects, Inc., f/k/a Blitch Architects, Inc.
   Though its registered agent
   Robert M. Steeg
   Steeg & O'Connor, L.L.C.
   201 St. Charles Ave., Suite 3201
   New Orleans, Louisiana 70170

3. Carrie E. Dobbins
   4100 Touro Street
   New Orleans, Louisiana 70122

4. Tracy M. Mercadel
   2727 Acacia Street
   New Orleans, Louisiana 70122

5. Reginald M. Walker
   6702 Beauregard Avenue
   New Orleans, Louisiana 70124

6. Richard Mancini
   3779 Desire Parkway
   New Orleans, Louisiana 70123

7. Mr. Peter Clark
   4100 Touro Street
   New Orleans, Louisiana 70122

(Service instructions continued on next page.)



A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

PLEASE SERVE - VIA LONG ARM CITATION

8. Lori H. Moon
500 Eagle Pointe Drive
Columbia, South Carolina 29229

9. Catherine D. Lamberg
5349 Pipers Gap Drive
Memphis, Tennessee 38134-6409

W.\Clients\36625-39\Pleadings\Petition.wpd

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**